# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KITE SHIPPING LLC,<br><br>                      Plaintiff,<br>  v.<br><br>SAN JUAN NAVIGATION CORPORATION AND MANDARIN SHIPPING PTE LTD.,<br><br>                     Defendants.<br>CARDINAL SHIPPING LLC,<br><br>                 Intervening Plaintiff,<br>  v.<br><br>SAN JUAN NAVIGATION CORPORATION AND MANDARIN SHIPPING PTE LTD.,<br><br>                     Defendants.<br>INTERNATIONAL MATERIALS INC.,<br><br>                     Intervenor. | Case No. 11cv02694 BTM (WVG)<br><br>**ORDER ADOPTING MAGISTRATE JUDGE'S ORDER VACATING ATTACHMENT AND DENYING INTERNATIONAL MATERIALS INC.'S MOTION FOR LEAVE TO INTERVENE** |

      Pending before the Court is Plaintiffs' Objections and Application for Review of the Magistrate Judge's Order Vacating Attachment (Doc. 57).  For the reasons set forth herein, the Court adopts Magistrate Judge Gallo's order, but stays the order pending further proceedings before this Court.  Also pending before the Court is International Materials Inc.'s

Motion for Leave to Intervene (Doc. 33). The Court denies this motion.

## **BACKGROUND**

The following overview of the facts in this case proceeds in two parts. The first part reviews the facts leading up to Plaintiffs' request for a writ of attachment. The second part reviews events occurring after the commencement of this lawsuit, up through the entry of Magistrate Judge Gallo's March 26, 2012 order vacating the attachment.

a. <u>Events leading up to the present action</u>

Plaintiff Kite Shipping LLC ("Kite Shipping") is the owner of the M/V Kite, a vessel (the "Kite"). Plaintiff chartered the Kite to Defendant San Juan Navigation Corporation ("SJN"), pursuant to a 2006 time charter party agreement. Plaintiff alleges that in 2010, during the term of its 2006 agreement, SJN caused damage to the Vessel's engines, resulting in financial losses to Plaintiff. Plaintiff has commenced arbitration in London, claiming roughly $1.25 million in damages to the engine, wrongfully withheld hire payments, estimated interest on the principal claim, and estimated attorneys' fees. The action before this Court is an ancillary proceeding brought to attach and garnish assets of SJN in aid of the London arbitration.

In March of 2011, SJN chartered the M/V Mandarin Fortune (the "Mandarin Fortune"), a vessel owned by Mandarin Fortune Shipping PTE ("MFS") (now a defendant in this action). Subsequently, SJN sub-chartered the Mandarin Fortune to International Materials Inc. ("IMI") (now a putative intervenor in this action). The Mandarin Fortune was scheduled to arrive at the Port of San Diego on November 19, 2011 (during the period of IMI's subcharter of that vessel from SJN). On November 17, 2011, Plaintiff Kite Shipping commenced the present action, seeking to attach all of SJN's property located on the Mandarin Fortune (or payment therefore) pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims

and Asset Forfeiture Actions ("Rule B"). SJN's property on the Kite consisted mainly of bunker fuel ("bunkers").

### b. Overview of present litigation

On November 17, 2011, Magistrate Judge Gallo ordered the Clerk to issue process directing the United States Marshal to attach all bunkers on board the Mandarin Fortune belonging to SJN and garnish all other tangible and intangible property on board under the custody or control of SJN, its sub-charterers, or its agents (Doc. 5).

On November 18, 2011, Cardinal Shipping Limited ("Cardinal") moved for leave to intervene as a matter of right (Docs. 7 and 8). Cardinal claimed that SJN owed it $172,787.58 in unpaid hire pursuant to a charter party entered between Cardinal and SJN in 2009, that the dispute between Cardinal and SJN had been submitted to arbitration in London, and that the disposition of this matter absent Cardinal would impair Cardinal's ability to satisfy its claim against SJN. Magistrate Judge Gallo entered orders that day permitting Cardinal to intervene (Doc. 10) and authorizing issuance of process of maritime attachment and garnishment for the benefit of Cardinal (Doc. 12). Cardinal is now a plaintiff in this action.

The Mandarine Fortune did not arrive at the Port of San Diego on November 19, 2011, as scheduled. Rather, it loitered off the California Coast from November 18, 2011, until the morning of November 21, 2011, at which time it arrived at port and the United States Marshal executed service. See Doc. 15 (certificate of service dated 21 November 2011); Doc. 21, Ex. 2 (emails dated 18-20 November 2011). On that same day, Plaintiffs and MFS entered into an agreement pursuant to which MFS placed $300,000 into an escrow account to secure the release of the bunkers onboard the Mandarin Fortune. See Pl. Br. (Doc. 57) at 2, Def. Br. (Doc. 58) at 1 n.1.

On December 9, 2011, MFS moved for an order to vacate the attachment (Doc. 17), arguing that at the time of service of the writ of attachment, SJN was neither the owner nor

possessor of the attached bunkers. With respect to ownership, MFS stated that SJN ordered the bunkers on October 10, 2011, for an agreed purchase price of $609,982.58. On November 11, 2011, SJN notified MFS by letter that it was going out of business and was ceasing operations immediately. See Doc. 17-3, Ex. 3 (Letter dated 11 November 2011). The letter attempted to arrange a novation pursuant to which IMI, the current "voyage charterer" of the Mandarin Fortune (pursuant to a sub-charter agreement with SJN), could substitute in for SJN as the direct charterer of the vessel. The letter also assigned to MFS all interests in the bunkers on board the vessel, as well as the balance owed to SJN by IMI. (Id.) On November 17, 2011, MFS paid the entire invoice amount of $609,982.58 on the bunkers. See Doc. 17-3, Ex. 4 (Invoice dated 17 November 2011). Thus, according to MFS, by November 21, 2011, MFS owned all the bunkers onboard the Mandarin Fortune. With respect to *possession* of the bunkers, MFS stated that it terminated its time charter with SJN on November 20, 2011, and therefore SJN neither owned nor possessed the bunkers at the time of service. See Doc. 17-3, Ex. 3 (Email dated 20 November 2011).

Plaintiffs Kite Shipping and Cardinal (collectively, "Plaintiffs") filed their opposition to the motion to vacate (Doc. 20) on January 6, 2012. In addition to arguing against the evidence showing that MFS--not SJN--owned the bunkers, Plaintiffs contended that MFS and SJN are alter egos. Plaintiffs supported their alter ego theory with allegations that: (a) MFS payed for the bunkers on SJN's behalf; (b) there is no formal agreement memorializing the transfer of possession of the bunkers from SJN to MFS; and (c) MFS ordered the Mandarin Fortune to loiter off the California coast between November 18 and November 20, 2011, presumably because SJN had warned MFS of the order of attachment and MFS wanted to terminate the charter party with SJN before bringing the Mandarin Fortune into the Port of San Diego. (Doc. 20 at 9-10.) Plaintiffs also sought broad jurisdictional discovery on their alter ego theory.[1]

---

[1]Specifically, Plaintiffs requested: "(i) correspondence exchanged between MFS and SJN, from the beginning of the time charter until the time of the purported termination of same; (ii) any and all agreements entered into between MFS and SJN from January 1, 2010 to present; (iii) correspondence exchanged between SJN and the voyage charterer of the M/V MANDARIN FORTUNE, International Materials Inc., from the beginning of the time

On January 10, 2012, before MFS filed its reply, Plaintiffs filed their Amended Verified Complaint (Doc. 25), in which they repeated their allegation that "at all material times, there existed such unity of ownership and interest between Defendant SJN and Defendant MFS, that no separation exists between them . . . ." (Doc. 25 at ¶ 37.) In addition to the factual allegations contained in their opposition to the motion to vacate, Plaintiff's alleged in the Amended Verified Complaint that SJN directed IMI (the sub-charterer) to pay to MFS all hire payments owed to SJN for the sub-charter of the Mandarin Fortune (totaling $77,630.97). (Id. at ¶ 40.)

In its reply brief (Doc. 30), filed January 13, 2012, MFS endeavored to shed light on Plaintiffs' factual allegations underlying its alter ego theory. MFS first claimed that it paid the entire invoice on the bunkers ordered by SJN because: (a) pursuant to the terms and conditions of the sale of the bunkers, any bunkers ordered by a charterer are deemed ordered on behalf of the owner (MFS); and (b) MFS was listed (along with SJN) as a "Buyer" on the confirmation of sale. Thus, MFS paid the invoice to avoid incurring liability for nonpayment; *not*, as Plaintiffs claim, on behalf of SJN. Second, MFS claimed that under English law (which governs the contractual relationship between MFS and SJN), the November 11, 2011 letter from SJN to MFS sufficed to effectuate the transfer of the bunkers to MFS; no formal agreement or novation was otherwise required. Third, MFS attempted to debunk the theory that the Mandarin Fortune delayed entry into the Port of San Diego to avoid the attachment, stating that it entered port with the knowledge that the bunkers would be attached, and that in fact it had already entered negotiations with Plaintiffs' counsel regarding the $300,000 security payment. Lastly, MFS explained that the hire payments owed by IMI (as sub-charterer) to SJN (as charterer) now rightfully belong to MFS, since the charter party between SJN and MFS grants MFS (as "owners") a lien on any amounts owed by a sub-charterer to SJN for use of the Mandarin Fortune.

---

charter until the time of the purported termination of same; (iv) correspondence exchanged between MFS and SJN, and the bunker supplier, Trans-Tec, in connection with the purchase of the bunkers at issue; and (v) Vessel records indicating the amount of bunkers onboard during the relevant time period, and the amount of bunkers consumed." (Doc. 20 at 10-11.)

Magistrate Judge Gallo held a hearing on the motion to vacate on January 25, 2012, at which Plaintiffs, for the first time, presented certain documents allegedly showing a connection between MFS, SJN, and MFS's parent company, Dasin Holdings Pte. Ltd. ("Dasin"). The documents introduced by Plaintiffs show that MFS, Dasin, and an entity called San Juan Navigation (Singapore) Pte. Ltd. ("SJN (Singapore)") shared a registered corporate address and certain agents and officers. Magistrate Judge Gallo permitted MFS to respond in writing. On February 21, 2012, MFS filed a supplemental response (Doc. 48) in which it stated that SJN (Singapore) is an entirely different entity from SJN, and that it was a former joint venture between SJN and Dasin. MFS reiterated that SJN is registered in the Republic of the Marshall Islands, with a principal place of business in Bainbridge Island, Washington, United States. MFS also pointed out that SJN shares a Washington business address with an entity called San Juan Navigation LLC ("SJNL"), and that none of the members of SJNL listed on SJNL's certified annual report (introduced as an exhibit by MFS) are officers, directors, or shareholders of MFS or Dasin.

On March 26, 2012, Magistrate Judge Gallo entered an order vacating the attachment (Doc. 55). In that order, Magistrate Judge Gallo found that MFS owned the bunkers at the time of service of the writ of attachment (November 21, 2011), since SJN had transferred its ownership interest in the bunkers to MFS in the November 11, 2011 letter, and MFS paid the balance on the invoice for the bunkers on November 17, 2011. (Doc. 55 at 6.) The order also found, "[u]pon reviewing all documents, [that] it is clear to the Court that [SJN] is a separate and distinct entity from San Juan (Singapore) and Mandarin Fortune." (Id. at 10.) Of particular probative value to the Magistrate Judge were the passage from SJN's website stating that "[o]ur Singapore office is a joint venture between noted Chinese shipowner DaSin and San Juan Navigation" (id.), and a November 16, 2011 email from Dasin to SJN regarding the payment of the outstanding balance on the bunkers, in which a representative from Dasin wrote:

> Owners are arranging payment of the attached invoice on a without prejudice basis but hereby call upon SJN to immediately reimburse the sum remitted. Unless and until SJN do[es] so, the bunkers will of course be Owners' property. All Owners' rights remain expressly reserved.

(Id. at 11 (citing Doc. 30-1, Ex. G at 4 (email dated 16 November 2011)).) Magistrate Judge Gallo noted that "[t]hese are not the words of a company paying the debt of its subsidiary or alter ego." (Id.) Magistrate Judge Gallo denied Plaintiffs' request for limited discovery regarding their alter ego theory on the grounds that "the documentation before the Court is more that adequate to show ownership[, the] discovery requests [are] overbroad and unnecessary[,] . . . [and] all the evidence before the Court indicates that [Plaintiffs are] not likely to find anything to support [their] alter ego theory." (Id. at 4-5.) Magistrate Judge Gallo stayed the execution of its order pending this Court's resolution of the present objection.

## **DISCUSSION**

In their present objection (Doc. 57), Plaintiffs request this Court to reverse the order vacating attachment, or, in the alternative, to stay execution of that order and to permit Plaintiffs to conduct limited jurisdictional discovery. In the event this Court affirms Magistrate Judge Gallo's order, Plaintiffs request a further stay of the vacatur order pending appeal to the Ninth Circuit. For the reasons set forth below, the Court adopts the recommendation of the magistrate judge that the order be vacated, grants Plaintiffs' request for limited jurisdictional discovery, and grants Plaintiffs' request for a stay of the vacatur order pending further proceedings in this Court.

The Court addresses IMI's motion for leave to intervene (Doc. 33) in the final subpart of this discussion.

a. Standard of review

Ordinarily, an order vacating a maritime attachment is reviewed for abuse of discretion, although legal conclusions underpinning the order are reviewed de novo. See Equatorial Marine Fuel Management Services Pte. Ltd. v. MISC Berhad, 591 F.3d 1208, 1210 (9th Cir. 2010) (citing Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 48 (2d Cir.

2008)). However, the Court agrees with Plaintiffs that MFS's original motion to vacate the attachment is a dispositive motion within the meaning of Rule 72(b) of the Federal Rules of Civil Procedure, since the effect of an order to vacate the attachment is to deprive the Court of jurisdiction. See United States v. Rivera-Guerrero, 377 F.3d 1064, 1068 (9th Cir. 2004) ("[W]e do not simply look to the list of excepted pretrial matters in order to determine the magistrate judge's authority. Instead, we must look to the effect of the motion, in order to determine whether it is properly characterized as 'dispositive or non-dispositive of a claim or defense of a party.'").

Accordingly, the Court treats Magistrate Judge Gallo's order as a report and recommendation, and reviews it de novo. See Fed. R. Civ. P. 72(b)(1); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.")

   b.   Merits of decision to vacate attachment

In order to secure an attachment of a maritime defendant's property, the plaintiff must establish each of the following: (1) the plaintiff has a valid prima facie claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. See Equatorial Mar. Fuel Mgmt. Servs. PTE v. MISC Berhad, 591 F.3d 1208, 1210 (9th Cir. 2010); Fed. R. Civ. P., Supp. R. B.

After receiving notice of the attachment, the defendant may contest it under Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims, and may do so by arguing that the plaintiff failed to meet one of the four conditions for attachment. Equatorial, 591 F.3d at 1210. In a Rule E(4)(f) challenge, the plaintiff carries the burden of justifying the continued attachment. Id.; see also Fed. R. Civ. P., Supp. R. E(4)(f). The plaintiff need not

prove its case at a Rule E(4)(f) hearing; rather, the plaintiff only needs to show "probable cause" for the issuance of the warrant or writ (i.e. that the plaintiff is "reasonably likely to prevail" on the merits of the contested issue). See OS Shipping Co. Ltd. v. Global Mar. Trust(S) Private Ltd., 11cv377, 2011 WL 1750449, at *5 (D. Or. May 6, 2011) (noting, in light of absence of binding Ninth Circuit authority, that "[n]umerous unpublished district court decisions support [the probable cause] standard").

The dispute in this case revolves around the third prong; specifically, whether the attached property (the bunkers) belonged to the defendant (SJN) at the time of service of the writ of attachment on November 21, 2011. Plaintiffs have not challenged Magistrate Judge Gallo's conclusion that MFS actually owned and possessed the bunkers on November 21. Rather, they maintain that "SJN, MFS, and non-parties Dasin Shipping Pte. Ltd. and Dasin Holdings Pte. Ltd. are alter egos, dominated and controlled by the Dasin Holdings Group." (Doc. 57 at 6.)

With respect to the issue of corporate identity, "[f]ederal courts sitting in admiralty generally apply federal common law[,]" and thus "piercing of the corporate veil [is permissible] where a corporation uses it alter ego to perpetrate fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997).

In their objection, Plaintiffs submit to the Court the same set of documents produced before the magistrate judge showing a unity of officers/directors and a common corporate address for MFS, Dasin, and SJN (Singapore). However, Plaintiffs' attempt to conflate SJN with SJN (Singapore) is undermined by the passage from SJN's website--quoted in Plaintiffs' own brief (Doc. 57 at 8)--stating that SJN (Singapore) "is a joint venture between noted Chinese shipowner Dasin and San Juan Navigation." Moreover, MFS's statement that SJN (Singapore) was originally a joint venture between SJN and MFS, and is now wholly owned by MFS, finds support in the documentary record. For example, MFS submitted a Singapore Accounting and Corporate Regulatory Authority ("ACRA") Report for SJN (Singapore) (Doc.

58-3, Ex. L), current as of April 28, 2010, indicating that at the time of the report, "Edmund Grundy Ellis"[2] was a director of SJN (Singapore), and that half of the shares of SJN (Singapore) belonged to "San Juan Navigation Corp." However, Plaintiffs submitted a more recent ACRA Report, dated January 25, 2012, indicating that *all* of SJN (Singapore)'s shares are owned by Dasin Holdings Pte. Ltd., and that the only director of SJN (Singapore) is Zhang Lanshui, who has been a director since the date of incorporation in 2004. (Doc 57-2, Ex. 5.)

Plaintiffs also claim that MFS paid for the bunkers on behalf of SJN, without receiving adequate consideration, but MFS has introduced documentary evidence (in the form of email correspondence with the seller of the bunker fuel and a copy of the invoice) showing its independent obligation to pay. Lastly, Plaintiffs note that SJN has represented on its website that the Mandarin Fortune was part of its "fleet of ships," but Plaintiffs have not meaningfully refuted MFS's explanation that charterers (such as SJN) commonly list chartered vessels (such as the Mandarin Fortune) as part of their fleet.

In response to Plaintiffs' objection, MFS has introduced documents demonstrating the corporate relationships between Dasin, MFS, SJN (Singapore) and SJN. The organizational chart appended to MFS's opposition shows that SJN and MFS are related only through their joint venture, SJN (Singapore). See Doc. 58-4 at 12 of 12. MFS's characterization of this relationship is supported by additional documentary evidence introduced by MFS showing that SJN (as opposed to SJN (Singapore)) is incorporated in the Republic of the Marshall Islands, is located in the State of Washington, and currently has no officers, directors, or shareholders in common with Dasin, MFS, or SJN (Singapore). Plaintiffs have also introduced documentary evidence supporting the existence of an arms-length business relationship between MFS and SJN, including: (a) SJN's November 11, 2011 letter informing MFS that SJN is ceasing operations and attempting to arrange a novation of IMI's sub-charter to MFS; (b) a November 16, 2011 email from Dasin to SJN demanding immediate

---

[2] Edmund G. Ellis is the president of SJN and one of its directors, according to a certificate of incumbency from the Trust Company of the Marshall Islands for "San Juan Navigation Corp.," dated April 1, 2008. (Doc. 58-3, Ex. K.)

reimbursement of the amount paid on the invoice for the bunkers; and (c) a December 30, 2011 email from an attorney acting on behalf of MFS, informing SJN that MFS has appointed an arbitrator "in respect of any and all disputes arising out of on in connection with the Charterparty" between MFS and SJN (Doc. 58-3, Ex. H).

The Court agrees with Magistrate Judge Gallo's determination that Plaintiffs have not, at this time, established probable cause that MFS and SJN are in any sort of alter ego relationship.

c.   Request for limited jurisdictional discovery

Plaintiffs contend that the magistrate judge abused his discretion by refusing to permit limited jurisdictional discovery regarding Plaintiffs' alter ego theory. "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (citation omitted). "Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction, discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed." Laub v. U.S. Dept. of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (citation and quotation marks omitted).

In denying Plaintiffs' request for limited jurisdictional discovery, Magistrate Judge Gallo stated that "all the evidence before the Court indicates that [Plaintiff] is not likely to find anything to support its alter ego theory." (Doc. 55 at 5.)  The Court disagrees.  Although Plaintiffs have failed to show probable cause that MFS and SJN are in an alter ego relationship, they have shown a business relationship between MFS and SJN that greatly exceeds the contractual relationship formed by the Mandarin Fortune charter party. Although MFS calls SJN (Singapore) a "*former* joint venture" with SJN (Doc. 48 at 3 (emphasis added)), a printout from SJN's website, dated November 14, 2011, describes SJN

(Singapore) as "[o]ur Singapore office," and describes it as a *current* joint venture with Dasin. See Doc. 57-2, Ex. 2.

Bearing in mind that "[a]n erroneous attachment of funds is extremely burdensome on the companies whose funds are attached[,]"[3] the Court finds that expedited, limited jurisdictional discovery is appropriate in this case to afford Plaintiffs an opportunity to establish their alter ego allegations.

d. IMI's motion for leave to intervene

On January 10, 2012, Plaintiffs filed a motion (Doc. 26) requesting an order that would attach and garnish debts owed by IMI (the sub-charterer of the Mandarin Fortune in November 2011) to Defendants (in the amount of $77,630.97). On January 23, 2012, IMI filed a motion for leave to intervene, fearing exposure to multiple liabilities on this amount. IMI does not assert any interest in the $300,000 originally attached in this action. On March 26, 2012, after IMI's motion for leave to intervene had been submitted on the papers, Magistrate Judge Gallo denied Plaintiffs' motion to attach debts owed by IMI, reasoning that Plaintiffs "fail[ed] to provide any basis for the Court to determine that the debt or funds are present in this District such that the Court may assert Rule B jurisdiction over them." See Doc. 54 at 2 (emphasis in original). No party objected to Magistrate Judge Gallo's order on this motion, nor does the Court see any reason to question his conclusion.

This proceeding is ancillary to the arbitrations in which Plaintiffs seek recovery against Defendant SJN, and the sole purpose of this proceeding is to protect Plaintiffs' ability to satisfy a judgment against SJN in those arbitrations. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437-38 (2d Cir. 2006) ("The [purpose of the] power to grant attachments in admiralty is . . . two-fold: first, to gain jurisdiction over an absent

---

[3] REA Navigation, Inc. v. World Wide Shipping Ltd., 08 Civ. 9951, 2009 WL 3334794, at *3 (S.D.N.Y. Oct. 14, 2009).

1  defendant; and second, to assure satisfaction of a judgment."). The role of the Court in this
2  proceeding is *not* to determine the general prioritization of creditors for SJN or IMI. Thus, the
3  Court denies IMI's motion for leave to intervene without prejudice. To the extent IMI believes
4  the Court has personal jurisdiction over all relevant parties, IMI may seek relief by filing an
5  interpleader action pursuant to Federal Rule of Civil Procedure 22.

## **CONCLUSION**

For the reasons set forth above, the Court ADOPTS the magistrate judge's order vacating the attachment without prejudice, based on the present record. However, the Court STAYS the vacation of the attachment until September 30, 2012.

Plaintiffs may engage in the following jurisdictional discovery: (a) eight reasonably narrow document requests; (b) ten reasonably narrow interrogatories (no subparts will be allowed); (c) two depositions not to last longer than six hours each; and (4) no requests for admissions. This discovery shall be completed by August 15, 2012. Plaintiff may then file a motion for reconsideration before this Court on or before August 22, 2012. Any opposition shall be filed on or before August 29, 2012. A reply may be filed by September 5, 2012. The Court will hear oral argument on any such motion for reconsideration on September 12, 2012, at 4:00 p.m. Any disputes regarding discovery shall be resolved forthwith before the magistrate judge so as not to interfere with this scheduling order.

The Court DENIES IMI's motion for leave to intervene, without prejudice to IMI filing an action for interpleader in the appropriate jurisdiction.

**IT IS SO ORDERED.**

DATED: July 11, 2012

*Barry Ted Moskowitz*
BARRY TED MOSKOWITZ, Chief Judge
United States District Court