1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KITE SHIPPING LLC, | Case No. 11cv02694 BTM (WVG) |
| Plaintiff, | **ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION** |
| v. | |
| SAN JUAN NAVIGATION CORPORATION AND MANDARIN SHIPPING PTE LTD., | |
| Defendants. | |
| CARDINAL SHIPPING LLC, | |
| Intervening Plaintiff, | |
| v. | |
| SAN JUAN NAVIGATION CORPORATION AND MANDARIN SHIPPING PTE LTD., | |
| Defendants. | |

On September 21, 2012, Plaintiffs filed a motion for reconsideration of the Court's order adopting the Magistrate Judge's order vacating attachment, following the limited discovery permitted by the Court.  For the reasons below, the Court **DENIES** the motion for reconsideration and **DENIES** Plaintiffs' request for a stay pending appeal.

## I.  Background

The Court presumes the Parties' familiarity with the facts and so will only touch upon them briefly here, with the exception of the present motion for reconsideration pending before the Court.

Plaintiffs Kite Shipping LLC ("Kite Shipping") and Cardinal Shipping Limited ("Cardinal") (collectively, "Plaintiffs") are in arbitration proceedings against San Juan Navigation Corporation ("SJN Corp.") in London.  The action before this Court is an ancillary proceeding brought pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B") to attach and garnish assets of SJN Corp. to help satisfy Plaintiffs' claims for damages awarded in arbitration.  The attachment was originally for any and all of SJN's property located on the M/V Mandarin Fortune ("Mandarin Fortune"), a vessel owned by Mandarin Fortune Shipping PTE. LTD ("MFS") and charted by SJN Corp.  The actual property attached was the fuel or "bunkers" on the vessel.  The property attachment was later substituted by agreement of the Parties for $300,000 placed in escrow.

On December 9, 2011, MFS moved for an order to vacate the attachment (ECF No. 17), arguing that at the time of service of the writ of attachment, SJN was neither the owner nor possessor of the attached bunkers. Plaintiffs filed their opposition to the motion to vacate on January 6, 2012 (ECF No. 20), in which they contended for the first time that MFS and SJN are alter egos.

During the subsequent hearing on January 25, 2011, Magistrate Judge Gallo ordered additional briefing by MFS on the alter ego issue (see ECF No. 38 at 46-47, & ECF No. 39). In the brief (ECF No. 48), MFS stated that the only connection between SJN and MFS was the charter party for the Mandarin Fortune, which was done at arm's length.  According to MFS, the documents offered by Plaintiffs in support of their alter ego theory actually related to a former joint venture between Dasin Holdings Pte. Ltd. ("Dasin Holdings") and SJN, which was a company called San Juan Navigation (Singapore) Pte. Ltd. ("SJN (Singapore)"). Dasin Holdings is the parent company of MFS and a company called Dasin Shipping Pte. Ltd. ("Dasin Shipping") (collectively, the "Dasin companies").   MFS argued that the interrelationship among the three Dasin companies is irrelevant since none of them are defendants in this case; the only question is whether SJN and MFS are alter egos. Furthermore, according to MFS, the interrelationship among the three companies is in any

1    event not indicative of an alter ego relationship, as "it is common for one entity to own a

2    vessel, another entity to manage the vessel, and such managing entity to be held by a larger

3    holding entity" for tax reasons (ECF No. 48 at 2, 4).

4          In an order dated July 11, 2012 (ECF No. 59), this Court adopted the Magistrate

5    Judge's March 26, 2012 order (ECF No. 55) vacating the attachment, but allowed Plaintiffs

6    limited discovery on the alter ego issue and stayed the vacatur order pending further

7    proceedings in this Court.  In allowing Plaintiffs limited discovery on the alter ego issue, the

8    Court found that, "[a]lthough Plaintiffs have failed to show probable cause that MFS and SJN

9    are in an alter ego relationship, they have shown a business relationship between MFS and

10   SJN that greatly exceeds the contractual relationship formed by the Mandarin Fortune

11   charter party" (ECF No. 59 at 11).  In the order, the Court allowed Plaintiffs to file a new

12   motion for reconsideration after the limited discovery.

13         On September 21, 2012, Plaintiffs filed their new motion for reconsideration (ECF No.

14   71), arguing that factors traditionally indicative of an alter ego relationship show that SJN,

15   MFS, SJN (Singapore), Dasin Holdings, and Dasin Shipping are all alter egos.  Plaintiffs have

16   also requested that the Court compel MFS to "properly and completely" respond to Plaintiffs'

17   document requests, and for leave to file a Second Amended Complaint to include other

18   entities affiliated with Dasin Holdings.  Finally, in the event that this Court denies the motion

19   to reconsider, Plaintiffs have requested a further stay of the vacatur order pending appeal

20   to the Ninth Circuit.

21         On October 1, 2012, MFS filed its opposition (ECF No. 75),[1] arguing that Plaintiffs

22   have still not demonstrated that any of the alter ego factors apply *as between SJN and MFS*.

23   For Plaintiffs' alter ego theory to succeed, they must show that, although MFS technically

24   owned and possessed the bunkers on November 21 rather than SJN, in reality it made no

25   difference because SJN and MFS are alter egos.  Thus, the theory is necessarily predicated

26   on SJN and MFS being alter egos, regardless of MFS's relationship to the other Dasin

27   companies.

28   ───────────────

          [1] Given the lack of evidence by Plaintiff, it is unnecessary to rule on MFS's evidentiary
     objections.

1    In Plaintiffs' reply brief, filed October 12, 2012 (ECF No. 80), Plaintiffs argued that

2  "SJN Singapore is the vehicle through which the entities within the Dasin Group ... controlled

3  SJN" (Id. at 3.) Thus, according to Plaintiffs, while there is no direct connection between SJN

4  and MFS, MFS (and/or the other Dasin companies) controlled SJN indirectly through SJN

5  (Singapore) "so as to avoid SJN CORP.'s debts to its creditors."  (Id. at 4.)

6

7                                    **II.  DISCUSSION**

8  **A.  Plaintiffs' Alter Ego Theory**

9    In order to secure an attachment of a maritime defendant's property, the plaintiff must

10  establish each of the following: (1) the plaintiff has a valid prima facie claim against the

11  defendant; (2) the defendant cannot be found within the district; (3) the defendant's property

12  may be found within the district; and (4) there is no statutory or maritime law bar to the

13  attachment.  See Equatorial Mar. Fuel Mgmt. Servs. PTE v. MISC Berhad, 591 F.3d 1208,

14  1210 (9th Cir. 2010); Fed. R. Civ. P., Supp. R. B.

15    After receiving notice of the attachment, the defendant may contest it under Rule

16  E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims, and may do so by

17  showing that the plaintiff failed to meet one of the four conditions for attachment.  Equatorial,

18  591 F.3d at 1210.  In a Rule E(4)(f) challenge, the plaintiff carries the burden of justifying the

19  continued attachment.  Id.; see also Fed. R. Civ. P., Supp. R. E(4)(f).  The plaintiff need not

20  prove its case at a Rule E(4)(f) hearing; rather, the plaintiff only needs to show "probable

21  cause" for the issuance of the warrant or writ (i.e., that the plaintiff is "reasonably likely to

22  prevail" on the merits of the contested issue).  See OS Shipping Co. Ltd. v. Global Mar.

23  Trust(s) Private Ltd., 11cv377, 2011 WL 1750449, at *5 (D. Or. May 6, 2011) (noting, in light

24  of absence of binding Ninth Circuit authority, that "[n]umerous unpublished district court

25  decisions support [the probable cause] standard").

26    The dispute in this case revolves around the third prong; specifically, whether the

27  attached property (the bunkers) belonged to the defendant (SJN) at the time of service of the

28  writ of attachment on November 21, 2011.  Plaintiffs have not challenged Magistrate Judge

1   Gallo's conclusion that MFS actually owned and possessed the bunkers on November 21.

2   Rather, they maintain that "SJN, MFS, and non-parties Dasin Shipping Pte. Ltd. and Dasin

3   Holdings Pte. Ltd. are alter egos, dominated and controlled by the Dasin Holdings Group."

4   (ECF No. 57 at 6.)

5          With respect to the issue of corporate identity, "[f]ederal courts sitting in admiralty

6   generally apply federal common law[,]" which allows for "piercing of the corporate veil where

7   a corporation uses its alter ego to perpetrate fraud or where it so dominates and disregards

8   its alter ego's corporate form that the alter ego was actually carrying on the controlling

9   corporation's business instead of its own." Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287,

10  1294 (9th Cir. 1997). Piercing the corporate veil is "the rare exception" rather than the rule,

11  and is "usually determined on a case-by-case basis." Dole Food Co. v. Patrickson, 538 U.S.

12  468, 475 (2003). See also Kilkenny v. Arco Marine Inc., 800 F.2d 853, 859 (9th Cir. 1986)

13  ("Corporate separateness is respected unless doing so would work injustice upon an

14  innocent third party."). However, most alter ego cases "involve an overreaching corporate

15  officer or a parent-subsidiary relationship." Ost-W.-Handel Bruno Bischoff GmbH v. Project

16  Asia Line, Inc., 160 F.3d 170, 174 (4th Cir. 1998).

17         Courts applying federal common law in an admiralty case "can look to state law in

18  situations where there is no admiralty rule on point." Id. Under California law, the alter ego

19  determination requires looking at the totality of the circumstances. Some of the factors that

20  California courts consider include: inadequate capitalization, commingling of funds and other

21  assets, disregard of corporate formalities, lack of segregation of corporate records, and

22  identical directors and officers. See Smith v. Simmons, 638 F. Supp. 2d 1180, 1191 (E.D.

23  Cal. 2009), aff'd, 409 F. App'x 88 (9th Cir. 2010) (citing VirtualMagic Asia, Inc. v.

24  Fil-Cartoons, Inc., 99 Cal.App.4th 228, 245 (2002)).

25         Plaintiffs draw on several of these traditional alter ego factors to argue that SJN and

26  MFS are alter egos, such as the fact that SJN (Singapore) shared office space and

27  employees with Dasin Shipping. (See ECF No. 71 at 9.) However, most of the factors do

28  not apply to the relationship between SJN and MFS, but rather between SJN (Singapore)

and MFS, which is irrelevant.  In addition, many of the facts that Plaintiffs cites to support their alter ego theory were known to Plaintiffs prior to the limited discovery.  Indeed, much of Plaintiffs' briefing was spent reiterating several of the same arguments that the Court found inadequate in Plaintiffs' initial motion for reconsideration.

The key issue is whether SJN – not SJN (Singapore) – is an alter ego of MFS.  In an effort to reconcile their alter ego theory with the evidence, Plaintiffs argue that "SJN Singapore is the vehicle through which the entities within the Dasin Group ... controlled SJN" (ECF No. 80 at 3.)  According to Plaintiffs, Zhang Lanshui "controlled SJN using his position at SJN Singapore, though efforts were made to conceal this control so as to avoid SJN CORP.'s debts to its creditors."  (Id. at 4.)  More specifically, Plaintiffs allege that, "[t]hrough Lanshui's control of SJN Singapore's employees and bank accounts, Lanshui in turn exercised domination and control over SJN" (ECF No. 71 at 13.)  Zhang Lanshui is a director of MFS, SJN (Singapore), Dasin Shipping, and Dasin Holdings, but he is *not* a director of SJN.  As will be discussed below, there is nothing to suggest that SJN (Singapore) was anything other than what it appeared to be: namely, a joint venture between two separate companies.  Moreover, Plaintiffs have offered no other evidence other than the joint venture to support their theory that SJN and MFS are alter egos.

To consider the merits of Plaintiffs' proposition that Mr. Zhang controlled SJN through SJN (Singapore), one must look at the history of SJN (Singapore).  During the limited discovery permitted by the Court, Plaintiffs took the depositions of Mr. Zhang and Bocca Yan, a former employee of SJN (Singapore) and current employee of Dasin Shipping.  These were submitted to the Court as exhibits to Plaintiffs' motion for reconsideration (ECF Nos. 71-2 & 71-3), so the Court has relied on them here for the following background.

SJN (Singapore) was established in December 31, 2004 as a joint venture between SJN and Dasin Holdings.  See Zhang Dep. 29:16-20.  Each company held fifty (50) percent of the shares, and each contributed $4,250,000 as capital.  Id. at 77:20 - 78:16.  According to Mr. Zhang, Edmund Ellis, a director of SJN, proposed the joint venture to Mr. Zhang, who in turn proposed it to his superiors at Dalian International Cooperative Company ("Dalian"),

1    the ultimate parent company of the Dasin entities.  Id. at 29:23 - 30:16.  Mr. Zhang and Mr.

2    Ellis knew each other from prior business dealings when one of the Dasin companies that

3    Mr. Zhang was affiliated with would charter vessels to SJN.  Id. at 33:11-19.  The joint

4    venture agreement was in English and given to Mr. Zhang by Mr. Ellis.  Id. at 32:15-25.

5    During the period when SJN (Singapore) was a joint venture, Mr. Ellis and Mr. Zhang were

6    the only board members of the company.  Id. at 13:5-7; Yan Dep. 14:10-22.

7         In May 2011, Mr. Ellis came to Singapore and met with Mr. Zhang.  At that time, SJN

8    was chartering four (4) vessels in which Dasin Holdings had an interest.  Mr. Ellis requested

9    a price reduction and extension of the hire period for three (3) of the four vessels because

10   he was having a "tight cash flow" in his company.  Mr. Zhang agreed, provided that SJN's

11   shares in SJN (Singapore) were used as security.  Mr. Ellis also requested a loan of one

12   million dollars ($1,000,000) for SJN from SJN (Singapore), which Mr. Zhang also agreed to

13   as the other board member of SJN (Singapore).  See Zhang Dep. 88:15-89:11.

14        Then, on November 11, 2011, Mr. Ellis announced that SJN was ceasing operation.

15   He subsequently resigned as director of SJN (Singapore) and surrendered SJN's shares in

16   SJN (Singapore). Id. at 87:20-23. There is some ambiguity regarding the timeline for exactly

17   when and how SJN forfeited its shares in SJN (Singapore), so it is possible that proper

18   procedures were not followed by Mr. Zhang for disbursing funds from SJN (Singapore) when

19   SJN was still technically part owner.  But common ownership is merely a potential indicator

20   of an alter ego relationship; it is not the thing itself.  Moreover, the common ownership in

21   question is of SJN (Singapore), not SJN.  MFS has never owned any part of SJN, nor has

22   SJN ever owned part of MFS.  A month or two wherein Mr. Zhang unilaterally distributed

23   funds for the joint venture while Dasin Shipping's co-venturer SJN was in the midst of

24   shutting down its business operations is wholly insufficient to demonstrate any kind of alter

25   ego relationship between MFS and SJN.

26        Similarly, while Plaintiffs have alleged that Mr. Zhang controlled SJN through his

27

28

control of SJN (Singapore)'s employees and bank accounts,[2] none of SJN (Singapore)'s three employees ever worked for SJN, only the joint venture.  As to SJN (Singapore)'s bank account, Mr. Zhang stated in his deposition that the signatories for SJN (Singapore)'s bank account were himself, Mr. Yan, and Ed Ellis -- a director of SJN and then-director of SJN (Singapore) – but that Mr. Ellis never signed any checks "because he was not here."  Zhang Dep. 42:2-15.  Since SJN's place of business is in the state of Washington, whereas SJN (Singapore) and the Dasin companies are all in Singapore, this is hardly surprising.

Plaintiffs have theorized that SJN (Singapore) was the vehicle through which MFS (and/or the other Dasin companies) controlled SJN.  However, in order to actually support this theory, Plaintiffs had to demonstrate that SJN (Singapore) was able to exert control over SJN in the first place.  This they have not done.  While Plaintiffs' burden is lower under the "probable cause" standard, it is not nonexistent.  They have offered very little evidence and only rank speculation that SJN and MFS are alter egos.  The fact that MFS and SJN once entered into a joint venture proves nothing as to an alter ego relationship between them, and Plaintiffs have offered no evidence to show that MFS exercised any excessive or improper control over SJN (Singapore), let alone that MFS used SJN (Singapore) to control SJN.  Without evidence that MFS was somehow able to control SJN, MFS' control over SJN (Singapore) is meaningless.

Therefore, the Court **DENIES** Plaintiffs' motion for reconsideration.

**B. Compelling Discovery**

Plaintiffs seek reconsideration based on the alleged failure by MFS to provide complete discovery.  However, Plaintiffs did not seek to compel this discovery before the District Judge or Magistrate Judge prior to filing the motion for reconsideration.  Rather, they seek to delay the release of the funds now by arguing that responses to their discovery will

---

[2] According to Mr. Zhang, after receiving notice from SJN that it had ceased operations, all three employees began working for Dasin Shipping "[b]ecause there was no business for [SJN (Singapore)]."  Zhang Dep. 28:4-12.  The implication, although neither deponent stated it outright, is that SJN (Singapore)'s business was primarily funneled from SJN.

1  help their case.  This should have been raised before filing the motion for reconsideration.

2  The Court views such arguments at this point as nothing more than a dilatory tactic.  The

3  Court specifically ordered on July 11, 2012, that "[a]ny disputes regarding discovery shall be

4  resolved forthwith before the magistrate judge so as not to interfere with this scheduling

5  order." (ECF No. 59 at 13.)  Furthermore, given the lack of evidence that SJN and MFS are

6  alter egos, further discovery would be futile.  Finally, the discovery requests are overbroad.

7  The request to compel discovery is **DENIED**.

8

9  **C.  Amending the Complaint**

10       Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once

11  as a matter of course...  In all other cases, a party may amend its pleading only with the

12  opposing party's written consent or the court's leave. The court should freely give leave when

13  justice so requires." Fed. R. Civ. P. 15(a).  When a party seeks to amend its complaint more

14  than once, "[w]hether leave to amend should be granted is generally determined by

15  considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; (4)

16  prejudice to the opposing party."  In re Rogstad, 126 F.3d 1224, 1228 (9th Cir.1997).

17       Plaintiffs seek leave to file a Second Amended Verified Complaint, which would

18  "include[] as defendants Dasin Group entities, and ... show[] a consistent pattern of disregard

19  for corporate formalities by these companies..." (ECF. No. 71 at 18.)  The Court **DENIES**

20  Plaintiffs' request as futile, and also notes that it would be extremely prejudicial to these

21  putative opposing parties to add them as parties at this late date.

22

23  **D.  Stay Pending Appeal**

24       Plaintiffs have requested, in the event that this Court denies their motion for

25  reconsideration, that the Court grant a stay of the vacatur order pending appeal to the Ninth

26  Circuit.  For the reasons below, the Court **DENIES** Plaintiffs' request.

27       "A stay is not a matter of right. It is instead an exercise of judicial discretion that is

28  dependent upon the circumstances of the particular case." Lair v. Bullock, No. 12-35809,

1  2012 WL 4883247, at *2 (9th Cir. Oct. 16, 2012) (internal quotations and alterations omitted)

2  (citing Nken v. Holder, 556 U.S. 418, 434 (2009)).  "The party requesting a stay bears the

3  burden of showing that the circumstances justify an exercise of this Court's discretion."  Id.

4  (internal quotations and alterations omitted) (citing Nken, 556 U.S. at 433-44).

5          The Court's discretion is guided by the following four-factor analysis: (1) whether the

6  stay applicant has made a strong showing that he is likely to succeed on the merits; (2)

7  whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the

8  stay will substantially injure the other parties interested in the proceeding; and (4) where the

9  public interest lies.  See id. (citing Nken, 556 U.S. at 434).

10         According to the Supreme Court, the first two factors "are the most critical." Nken, 556

11  U.S. at 434.  In theory, Plaintiffs could be irreparably injured absent a stay if the Ninth Circuit

12  were to find that SJN and MFS are alter egos, since the $300,000 will most likely leave the

13  district once the attachment is vacated and any remaining assets are unknown.  However,

14  Plaintiffs have almost no chance of success on the merits, and "[a]n erroneous attachment

15  of funds is extremely burdensome on the companies whose funds are attached."  REA

16  Navigation, Inc. v. World Wide Shipping Ltd., 08 Civ. 9951, 2009 WL 3334794, at *3

17  (S.D.N.Y. Oct. 14, 2009).  The Supreme Court made it clear in Nken that "[i]t is not enough

18  that the chance of success on the merits be better than negligible. ... More than a mere

19  'possibility' of relief is required." 556 U.S. at 434 (internal quotation marks and alterations

20  omitted).  Here, Plaintiffs have not offered any evidence tending to show that SJN and MFS

21  are alter egos.   They have made much of the connections among the other Dasin

22  companies, and between MFS and SJN (Singapore), but they have not offered one iota of

23  evidence showing that MFS is the alter ego of SJN.

24         Therefore, the Court **DENIES** Plaintiffs' request for a stay pending appeal, and directs

25  the Clerk to enter judgment vacating the attachment of $300,000.

26  **IT IS SO ORDERED.**

27  DATED:  December 26, 2012

28
                                        BARRY TED MOSKOWITZ, Chief Judge
                                        United States District Court